**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **DEANNA CAIN** | § | |
| | § | |
| **V.** | § | A-16-CV-30-LY |
| | § | |
| **TODD JOHNSON, et al.** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are Defendants Todd Johnson and the City of Cedar Park's Motions to

Dismiss (Dkt. Nos. 6 and 7), Plaintiff Deanna Cain's responses (Dkt. Nos. 9 and 10), and Johnson

and the City of Cedar Park's replies (Dkt. Nos. 11 and 12). The District Court referred the above-

motion to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C.

§636(b) and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the

Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate

Judges.

**I. FACTS AND ALLEGATIONS**

Plaintiff Deanna Cain is suing Defendant Todd Johnson, a detective with the City of Cedar

Park Police Department, for false arrest and deliberate fabrication of evidence under 42 U.S.C. §

1983. Dkt. No. 1 at ¶¶22-26. Cain is also bringing claims against the City of Cedar Park for failing

to properly train and supervise its police officers concerning probable cause. *Id*. at ¶¶27-30. Cain's

arrest arose out of the Cedar Park Police Department's investigation into complaints of fraud and

poor work associated with "Premier Auto Sales." *Id*. at ¶8. Det. Johnson says that during this

investigation he received anonymous tips about the sale of a Hummer sport utility vehicle to Cain. Dkt. No. 6 at 13. Recognizing her name, Johnson proceeded to look for Cain in Premier's files. *Id.*

Johnson testified in his affidavit that he found multiple documents completed by Cain that related to the Hummer and contained differing indications of the vehicle's mileage. Dkt. No. 1 at ¶9. He first found a loan agreement with Austin Telco Credit Union that included both a Bill of Sale showing the Hummer's mileage as 49,582 and an "Application for Texas Certificate of Title" showing mileage as 49,582. *Id.* After further research, Johnson found a copy of the vehicle title with the mileage stated on the reverse side as 123,019. *Id.* Johnson believed that Cain provided Austin Telco with incorrect mileage so that she would be approved for a loan. *Id.* Moreover, Johnson believed that Cain committed a felony by then providing false information on her title application. *Id.* Johnson then signed an affidavit to that effect to secure the issuance of an arrest warrant, which was subsequently issued by a judge. *Id.* at ¶11.

Cain was later arrested for fraud and sent to the Williamson County jail, where she was released after a few hours. *Id.* at ¶12. All the charges against Cain were soon dismissed after her case was reviewed by the prosecutor. *Id.* at ¶15. In the State's motion to dismiss the charges, the prosecutor wrote that the application for title was not filed in a fraudulent or inaccurate manner. *Id.* Rather, the form contained the current mileage statement. *Id.* Cain therefore alleges that there was no probable cause to arrest her because Johnson must have known that the affidavit he completed contained a false indication of the mileage as stated on the application. *Id.* at ¶11.

Cain asserts the title application did not show 49,582 miles as Johnson testified, but that it listed the mileage as 123,019, the correct mileage at the time of sale. *Id.* at ¶10. Thus, Cain contends Johnson lied about the contents of the documents obtained from Premier, and that the judge relied upon those lies to issue Cain's arrest warrant. *Id.* at ¶11. Moreover, Cain asserts that no reasonable

2

officer would have concluded from the facts available to Johnson that she had committed a crime. *Id.* Therefore, Cain brings this action alleging that she was arrested due to the false statements Johnson provided to the judge in order to obtain a warrant for her arrest. *Id.* at ¶¶22-26.

Additionally, Cain alleges that Johnson's false arrest of her is consistent with a pattern, practice, or custom of Cedar Park police officers fabricating evidence in arrest affidavits. *Id.* at ¶16. Cain asserts that Cedar Park Police officers have been sued for lying on probable cause affidavits and that Johnson himself has previously been sued for unlawfully detaining citizens. *Id. at* ¶¶17-18. Cain alleges this history demonstrates the City of Cedar Park fails to properly train its officers about the illegality of falsified arrest affidavits. *Id.* at ¶19. Moreover, Cain asserts this shows a failure of Cedar Park to supervise its police officers, particularly because the city has not disciplined officers caught falsifying arrest affidavits. *Id.* at ¶20. Cain says that both the failure to supervise and failure to train constitute "policies" of the City. at ¶27.  Further, Cain alleges (1) that these policies were actually known, constructively known, or ratified by the City, (2) that it was a known and obvious consequence of these policies that police officers would be placed in situations that would create situations similar to the plaintiff's, and (3) that these polices were a moving force of Cain's damages. *Id.* at ¶27-30. Under this theory, Cain brings an action against the City of Cedar Park for municipal liability. *Id.*

## II. STANDARD OF REVIEW

In separate motions each Defendant contends that Cain has failed to state a claim and therefore seeks dismissal under Federal Rule of Civil Procedure 12.  Johnson argues Cain's complaint lacks adequate factual detail regarding the prosecution that gave rise to this lawsuit. Johnson further argues Cain has failed to plead sufficient facts to avoid his qualified immunity. The City argues Cain has failed to plead sufficient facts to demonstrate municipal liability.

3

Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." To survive the motion, a nonmovant must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In evaluating a motion to dismiss, the Court construes the complaint liberally and accepts the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

Additionally, when a defendant raises an issue of qualified immunity, as Johnson has, the plaintiff is held to a heightened pleading standard. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). To rebut qualified immunity, a plaintiff must show: "(1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident." *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir.2008) (footnote omitted). In the context of a motion to dismiss, a plaintiff must state facts in the complaint which, if proven, would overcome the qualified immunity defense. *Babb v. Dorman*, 33 F.3d 472, 476 (5th Cir.1994).

### III. ANALYSIS

**A.    Claims Against Defendant Todd Johnson**

**1.    Fourth Amendment Claim for False Arrest**

Fifth Circuit precedent recognizes a cause of action under 42 U.S.C. §1983 for false arrest. *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir.2004). To establish her claim for false arrest, Cain must

plead facts showing that she was "arrested without probable cause in violation of the Fourth Amendment." *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007) (internal quotations omitted).

In his motion to dismiss, Johnson first argues that Cain is actually making a non-viable claim for malicious prosecution rather than false arrest. This argument is without merit. Malicious prosecution is a tort that occurs when criminal proceedings are improperly brought against an innocent person without probable cause. *Castellano v. Fragozo,* 352 F.3d 939, 945 (5th Cir. 2003) (*en banc*). The Fifth Circuit has held that a plaintiff may not bring a civil rights suit based on a theory of malicious prosecution because there is no constitutional right to be free from malicious prosecution. *Id.* Plaintiffs are however permitted to bring a civil rights suit when they are arrested without probable cause because it violates the Fourth Amendment. *Shields,* 389 F.3d at 150. In her complaint, Cain specifically asserts that she was arrested and taken to jail without probable cause. Dkt. No. 1 at ¶¶22-25. Therefore, Cain's allegations are not based on a malicious prosecution theory, but rather properly state a claim for false arrest.

Johnson also attempts to relabel Cain's claims as an allegation of negligent investigation, asserting that she is accusing Johnson of misinterpreting the documents that led to her arrest.  Claims for negligent investigation are not actionable under 42 U.S.C. §1983. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("We conclude that the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property."). But Cain is not alleging that Johnson misinterpreted the documents. Rather she has pled that Johnson "deliberately fabricated an arrest affidavit that caused Plaintiff to be charged with theft and arrested." Dkt. No. 1 at ¶23.  Cain is plainly saying Johnson's actions were intentional, not negligent. Accordingly, Johnson's argument here fails.

5

Next, Johnson contends that Cain's complaint fails to show that any errors in the arrest affidavit pass the *Franks* test to determine whether an error vitiates probable cause. Under *Franks,* a plaintiff must show an arrest affidavit contains materially false statements made knowingly and intentionally, or with a reckless disregard for the truth. *See Franks,* 438 U.S. at 155-56.*; Hale v. Fish*, 899 F.2d 390, 400 & n.3 (5th Cir. 1990). Further, such statements must have been necessary for the finding of probable cause. *Franks,* 428 U.S. 156. Cain alleges in her complaint that Johnson knew that the statements he made in the arrest affidavit were false and that Johnson's false statements were necessary for establishing probable cause because there would have been no reason to charge her with fraud if the car's mileage had been reported correctly. *Id.* at ¶¶9 and 11. Taking these allegations as true, Cain has pled sufficiently to pass the *Franks* test.

Johnson also argues that he is insulated from liability for false arrest because any causal chain was severed when the magistrate issued the warrant. Generally, once facts supporting an arrest are placed before an independent intermediary like a magistrate, and that intermediary finds probable cause to support the charge, then the intermediary's decision breaks the chain of causation for constitutional violations and insulates the initiating party. *Shields,* 389 F.3d at 150. However, the causal chain can remain intact if "it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Cuadra v. Houston Indep. Sch. Dist*., 626 F.3d 808, 813 (5th Cir. 2010) (quoting *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir.1988)). To keep the causal chain intact, it is not sufficient that an officer acted with malice in procuring a warrant. *Hand,* 838 F.2d at 1427. Rather, it must be shown that the officer's malicious motive led him to withhold relevant information from the intermediary. *Id.* at 1428. While an affidavit need not be perfect, if "the affidavit, supplemented by the omissions, would not be sufficient to support a finding of

6

probable cause" then a constitutional violation is stated. *United States v. Brown*, 298 F.3d 392, 413 (5th Cir.2002).  In her complaint, Cain alleges that Johnson did not provide the magistrate judge with the car's mileage as it was actually listed on the documents he obtained from Premier.  Dkt. No. 1 at ¶¶10-11. The mileage listed on the documents is relevant information that if withheld from the magistrate would likely taint his deliberation, as if the mileage would have been reported correctly there would be no basis to suspect Cain of fraud and no probable cause to arrest her. Therefore, accepting Cain's allegations as true, the causal chain for her false arrest is intact and the magistrate's issuance of the warrant does not insulate Johnson.

### 2.      Fourteenth Amendment Claim for Deliberate Fabrication

Johnson contends that Cain's claim of deliberate fabrication fails because the allegedly fabricated documents were never used at trial as he proposes is necessary. Dkt. No. 10 at 6. Although there were some prior indications to the contrary, the Fifth Circuit has recently ruled against this proposition. *See Cole v. Carson*, 802 F.3d 752  (5th Cir. 2015). The court in *Cole* held that due process means citizens are entitled "not to have police deliberately fabricate evidence and use it to frame and *bring false charges*" against them.  *Id.* at 771 (emphasis added). The deliberately fabricated documents need not be used at trial for a due process violation to occur because being falsely charged with a crime "brings inevitable damage to the person's reputation," requires "the person to mount a defense,"  and places that person "in the power of a court of law, where he may be required to appear." *Id.* at 772 (internal quotations omitted). Therefore, to make a claim for deliberate fabrication, Cain need not allege that fabricated evidence was used against her at trial, but only that it led to false charges being brought against her.  In her complaint, Cain alleges that fraud charges were falsely brought against her because Johnson deliberately fabricated evidence. Dkt. No.

1 at ¶11. Further, Cain alleges that her reputation was damaged and that she had to retain a defense attorney prior to the charges against her being dropped. *Id.* at ¶¶13-14. Therefore, Cain's deliberate fabrication claims survive Johnson's motion to dismiss.

### 3. Qualified Immunity

Johnson also invokes the protection of qualified immunity. Qualified immunity affords state actors protection against liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, "qualified immunity is designed to shield from civil liability all but the plainly incompetent or those who violate the law." *Brady v. Fort Bend Cnty.*, 58 F.3d 173, 174 (5th Cir.1995). Further, qualified immunity is immunity from suit, not merely from liability. *Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 618 n. 3 (5th Cir.1992). Therefore, courts treat it as a threshold question that should be decided "at the earliest possible stage in the litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). To rebut qualified immunity, a plaintiff must pass a two-pronged test by showing: "(1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident." *Waltman* 535 F.3d at 346. In the context of a motion to dismiss, a plaintiff must state facts in the complaint which, if proven, would overcome the qualified immunity defense. *Babb*, 33 F.3d at 476.

There is little question as to the first prong. It has been clearly established for some time that the Fourth Amendment protects people from an arrest without probable cause. *See, e.g., Freeman v. Gore,* 483 F.3d 404, 411 (5th Cir. 2007). Here, that is exactly what Cain is claiming: that she was arrested without probable cause. Dkt. No. 1 at ¶11. As for the second prong, Cain must demonstrate

8

that Johnson's conduct in preparing the arrest affidavit was objectively unreasonable. Cain alleges that Johnson deliberately provided false information in the affidavit for her arrest. Dkt. No. 1 at ¶23. The Fifth Circuit has held that a "reasonable officer would know that lying to a judge in order to procure an arrest warrant was unlawful." *Hampton v. Oktibbeha Cty. Sheriff Dep't*, 480 F.3d 358, 364 (5th Cir. 2007). Thus, if Johnson deliberately provided false information in his affidavit, he was not acting as a reasonable officer would. Therefore, taking Cain's allegations as true, she has pled sufficient facts to overcome Johnson's qualified immunity.

Cain argues in the alternative that even if Johnson did not deliberately lie, no reasonable officer could have believed that she committed fraud. Dkt. No. 10 at 6-7. While qualified immunity protects those who make reasonable mistakes about whether probable cause was present, it does not protect the plainly incompetent. *Bryant*, 502 U.S. at 227-229. In *Bryant,* the Supreme Court upheld qualified immunity for a Secret Service agent who arrested a man after mistakenly misinterpreting his rambling letter referring to a plot to assassinate the President. *Id.* The court there found the agent's mistake to be a reasonable one. *Id.* Johnson did not need to interpret a confusing letter, but rather properly read and record numbers listed on various documents. Thus, a mistake here would not be akin to the one made in *Bryant*, which required subjective interpretation. Instead, misreading numbers would be plainly incompetent behavior. Therefore, assuming that the documents clearly stated the correct mileage as alleged, a reasonable officer would not have believed Cain to be guilty of fraud so Johnson should not be protected by qualified immunity.

### B.    Claims Against Defendant City of Cedar Park

Cain alleges that the City of Cedar Park is liable for her false arrest because they failed to properly train or supervise Johnson. Dkt. No.  No. 1 at ¶¶27-30. Additionally, she alleges that the

City is liable because they ratified Johnson's actions when they did not discipline him following her false arrest. *Id.* at ¶28. The City has moved for dismissal, arguing that Cain has not met her pleading burden and has only made conclusory allegations. Dkt. No. 7 at 4-5.[1]

Although a municipality may not be held liable for the actions of employees under a theory of respondeat superior, a municipality may nonetheless be liable under §1983 if it has policies or customs that cause constitutional violations. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-92 (1978). To succeed on a claim of municipal liability, a plaintiff must prove three elements: (1) a policymaker, (2) a policy or custom, and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001) (citing *Monell*, 436 U.S. at 694). A plaintiff may also recover under a municipal ratification theory if a subordinate municipal employee commits a constitutional violation and a policymaker later approves that subordinate's actions. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

### 1.    Whether Cain's Claims Are Based on a Theory of Respondeat Superior

The City contends that Cain's complaint should be dismissed because while she purports to be making a claim based on municipal liability, in actuality she is attempting to hold the City liable for Johnson's actions through respondeat superior. Dkt. No. 7 at 4. As noted, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original). Therefore, a plaintiff must prove that a policymaker made a policy that was a moving force

---

[1]Cain concedes that she cannot recover punitive damages against the city and so her punitive damage claim against the City of Cedar Park should be dismissed. Dkt. No. 9 at 7.

of a constitutional violation.  *Piotrowski*, 237 F.3d at 578 (citing *Monell*, 436 U.S. at 694).  Here, Cain asserts: (1) that the City failed to adequately train or supervise its officers regarding probable cause, and (2) that the violation of her rights was a consequence of this failure. Dkt. No.1 at ¶¶27-30. Cain is not claiming that the City is responsible merely because of Johnson's actions.  Rather, she alleges that the City's failure to train Johnson was a moving force of the violation of her constitutional rights because she would not have been falsely arrested if he were properly trained. Dkt. No. 1 at ¶30; Dkt. No. 9 at 7.  Therefore, Cain is not trying to hold the City vicariously liable through respondeat superior and her complaint should not be dismissed on that basis.

2.      **Whether the City of Cedar Park's Policies Cause it to be Liable**

The City also argues that Cain's complaint should be dismissed because she has failed to plead sufficient facts to identify both the relevant policymaker and the policy, as is required for municipal liability. Dkt. No. 7 at 4-5; *See Piotrowski*, 237 F.3d at 578.  Each of these contentions will be addressed in turn.

To succeed on a claim of municipal liability, a plaintiff must plead that there is a policymaker who is responsible for the violation of her constitutional rights. *Piotrowski*, 237 F.3d at 578.  A policymaker is one who "takes the place of the governing body in a designated area of city administration." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.), on reh'g, 739 F.2d 993 (5th Cir. 1984).  In her complaint, Cain alleges that the City's inadequate training and supervision was "constructively known and/or ratified by the City of Cedar Park and its *policymakers*." Dkt. No. 1 at ¶29 (emphasis added). While not specifically identifying a policymaker, Cain does allege that the relevant policymaker, whoever that may be, was involved in the policy inadequacies that led to her false arrest. Cain further argues that she should not be required to specifically identify a

policymaker at this stage of the litigation because "the policymaker for a police department varies between cities, depending on what powers and authority have been delegated to the police chief." Dkt. No. 9, p. 5 (citing *Flanagan v. City of Dallas*, 48 F.Supp.3d 941,950-51 (N.D. Tex. Sept. 23, 2014)). In *Flanagan,* the court denied the defendant's motion to dismiss where there was a dispute regarding whether the city council or police chief was the final policymaker, noting the confusion surrounding the delegation of supervisory power between the two. *Flanagan,* 48 F.Supp at 950-51. At this early stage in litigation, it is plausible that if Cain were given an opportunity to perform discovery, she would be able to identify the policymaker responsible for setting police department policy. Therefore, her complaint should not be dismissed for failing to sufficiently identify a policymaker.

A plaintiff in a municipal liability suit must also identify a municipal policy that was a moving force behind the deprivation of her constitutional rights. *Piotrowski*, 237 F.3d at 578.  In her complaint, Cain asserts the existence of two different city policies: (1) the City has a pervasive pattern of unlawful arrests that rises to the level of a custom, and (2) the City fails to adequately train or supervise its police officers concerning probable cause affidavits. Dkt. No. 1 at ¶¶ 16-20, 27-28.

First, a city is subject to liability if it officially adopts or promulgates a policy statement, ordinance, or decision that results in a constitutional violation. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir.2010) (citing *Praprotnik*, 485 U.S. at 121). Alternatively, official policy can be "a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted or promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Brown v. Bryan Cnty.*, 219 F.3d 450, 457 (5th Cir.2000) (citation omitted). Thus, a municipality may be liable when there are "patterns of illegality that [rise]

12

to the level of customary policy." *Milam v. City of San Antonio*, 113 F. App'x 622, 626 (5th Cir. 2004). To survive a motion to dismiss a claim relying on this "pattern of illegality" theory, a plaintiff must allege the existence of a sufficient number of similar prior violations rather than isolated instances. *See Schaefer v. Whitted,* 121 F. Supp. 3d 701, 718 (W.D. Tex. 2015) (citing *Estate of Davis ex rel. McCully v. City of N. Richland Hills,* 406 F.3d 375, 383 (5th Cir. 2005)).

Here, Cain does not allege that it is official city policy to arrest citizens without probable cause. Rather, she contends that her arrest is "part of a pattern, practice, or custom of the City of Cedar Park's police officers of fabricating evidence for arrest affidavits." Dkt. No. 1 at ¶16. To support this contention, Cain alleges that Cedar Park police officers have "sworn out multiple arrest warrants to charge innocent people with crimes" and that they have "been sued for lying on probable cause affidavits to arrest innocent civilians." *Id.* at ¶¶16, 18. Further, Cain alleges that Johnson himself has once been sued for unlawfully detaining citizens in the past. *Id.* at ¶17.

These allegations are inadequate to survive a motion to dismiss. While Cain alleges that there are repeated past instances of constitutional violations, she is unable to point to any with specificity outside of the previous lawsuit against Johnson. Unfortunately, it is inevitable that police departments will sometimes charge innocent people with crimes. But such mistakes are not illegal. Rather, it is only illegal to arrest someone without probable cause. While Cain pleads generally that Cedar Park police officers have been sued for lying on probable cause affidavits, such allegations are insufficient. Being sued for lying on a probable cause affidavit does not prove that an officer actually made an arrest without probable cause or did anything illegal. Anyone can bring a lawsuit. The fact that Johnson has been previously sued for unlawfully detaining citizens suffers from the same defect. Therefore, these allegations do not show a "pattern of illegality that [rises] to the level

13

of customary policy" and Cain's claims based on this theory should be dismissed. *Milam,* 113 F.
App'x at 626.

      Second, a municipality may be liable for a failure to train or supervise if a plaintiff shows (1)
the municipality's training policy or procedure was inadequate, (2) the inadequate training policy was
a "moving force" or cause of the plaintiff's constitutional deprivation, and (3) the municipality was
deliberately indifferent to the need to adjust its training policy or adopt a new one. *Valles v. City of
Houston*, 613 F.3d 536, 544 (5th Cir. 2010). The plaintiff may establish the deliberate indifference
if "in light of the duties assigned to specific officers or employees the need for more or different
training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights,
that the policymakers of the city can reasonably be said to have been deliberately indifferent to the
need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).

      Here, Cain alleges that the City of Cedar Park "fails to train its officers that it is unlawful to
base arrest affidavits on false information." Dkt. No. 1 at ¶19.  Further, she alleges the City knew
the "obvious consequence of these policies was that City of Cedar Park police officers would be
placed in recurring situations in which [false arrest] would result." *Id.* at ¶29. Thus, Cain asserts that
this failure to train made it highly predicable that false arrest would result.  *Id.* Moreover, Cain
contents that the failure to train was a moving force of her constitutional deprivation.  *Id.* at ¶30. She
argues if Johnson were properly trained that it is unlawful to base arrest affidavits on false
information, she would have never been arrested. Dkt. No. 9 at 7.

      When Cain's allegations are taken as true, they meet the standard for municipal liability for
failure to train. First, if the City really did not train its officers that it is illegal to arrest people based
on false information, then their training was woefully inadequate. Second, if Johnson did not falsify

14

information on the arrest affidavit, Cain would have never been arrested. Thus, failing to train Johnson not to rely on false information in arrest affidavits would be a moving force of the violation of her constitutional rights. Third, if the officers were not trained about truthfulness in arrest affidavits and probable cause then it is highly likely that these types of constitutional violations would occur, thus indicating a deliberate indifference.

The City argues for a more stringent review of Cain's allegations, stating "the moving-force and deliberate indifference elements of municipal liability must not be diluted, for where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability." Dkt. No. 12 at 3 (quoting *James v. Harris Cty*., 577 F.3d 612, 618 (5th Cir. 2009) (internal citations omitted)). This authority is distinguishable, however, because that court there was considering a motion for judgment as a matter of law, which is reviewed under a different standard than a motion to dismiss. *See James*, 577 F.3d at 617. Additionally, the City argues that because all peace officers in Texas are mandated to meet training and licensing requirements that have been held to comply with constitutional requirements, Johnson could not have been inadequately trained. Dkt. No. 12 at 5. For this contention, the City relies upon *Tolan v. Cotton,* No. 4:09-CV-1324, 2015 WL 5310801 (S.D. Tex. Sept. 11, 2015). That case is distinguishable as well, because the court there had summary judgement evidence showing both that the defendant had completed the training mandated by the Texas Occupational Code and that the training was adequate. *Id.* at *3. As this case has yet to reach discovery, there is no evidence regarding the training provided by the City or undertaken by Johnson. Therefore, at this early stage of the litigation, and despite the somewhat unlikely pleadings to support the claim, Cain has pled sufficient facts to overcome the City's motion to dismiss on her theory of failure to train.

### 3.    Whether Cain Can Recover Under a Municipal Ratification Theory

Finally, the City argues that any ratification claim contained in Cain's pleadings is insufficient and should be dismissed. A plaintiff may recover for municipal liability "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Praprotnik*, 485 U.S. at 127. That is, if a subordinate municipal employee commits a constitutional violation and a policymaker then approves that violation, the policymaker has ratified the subordinates conduct thereby making it official policy that can be chargeable to the municipality. *Id.* To succeed under a ratification theory, a plaintiff must show that an investigation found constitutional violations and that the policymaker then knowingly approved of them. *Coon v. Ledbetter*, 780 F.2d 1158, 1162 (5th Cir. 1986). Alternatively, even if a plaintiff is unable to show knowledge on the policymaker's part, a successful claim can still be brought if the subordinate's conduct is "manifestly indefensible." *Id.* This is only available in extreme circumstances and does not give a plaintiff a remedy every time a policymaker defends his subordinates and those subordinates are later found to have broken the law. *Id.*

The hallmark fact pattern of manifestly indefensible subordinate conduct is found in *Grandstaff v. City of Borger,* 767 F.2d 161, 165 (5th Cir. 1985)*.* There the Fifth Circuit considered a case where multiple police officers opened fire on an unarmed, nonthreatening citizen as he exited his vehicle, killing him. *Id.* The sheriff's department then performed an internal investigation, finding that the officers had followed all departmental procedures. *Id.* The court found that "because the officers received no reprimands or discharges from the city following such a flagrant use of excessive force, there must have been a preexisting disposition and policy of reckless disregard for

life" and thus the municipality was open to liability. *Barkley v. Dillard Dept. Stores, Inc.*, 277 Fed.Appx. 406 (5th Cir. 2008) (citing *Grandstaff*, 767 F.2d at 171–72).

Here, Cain alleges that the City of Cedar Park Police Department "ratified Johnson's false arrest and he was never disciplined for making false statements to a court." Dkt. No. 1 at ¶28. Further, Cain alleges that the City "ratified Johnson's behavior by continuing to employ him, despite knowing he had made unlawful arrests before." Dkt. No. 9 at 7. Cain does not allege that any policymaker knowingly approved of constitutional violations. Although Cain refers Johnson having previously been sued for false arrest, there is no indication that Johnson was found liable, or actually violated the constitution then.  Moreover, the conduct in this case falls well short of the sort of "manifestly indefensible" conduct that can lead to liability for a ratification claim. The case here is about a false arrest arising from a dispute over the contents of legal documents relating to an automotive sale. This is a scenario much less outrageous than opening fire on an unarmed person. *See Grandstaff*, 767 F.2d at *165.* Therefore, Cain has not pled sufficient facts to survive the City's motion to dismiss her claims under a ratification theory.

## IV. RECOMMENDATION

Based upon the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that Defendant Todd Johnson's Rule 12(b)(6) Motion to Dismiss (Dkt. No. 6) be **DENIED**. The Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART** and **DENY IN PART** the City of Cedar Park's Rule 12(b)(6) Motion to Dismiss (Dkt. No. 7) in accordance with the foregoing.

17

**OBJECTIONS**

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir.1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within 14 days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. See 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–153, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir.1996) (en banc).

SIGNED this 3rd day of August, 2016.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE